shal could not have taken it in execution. The first levy, whether it were made under federal or state authority, withdraws the property from the reach of the process of the other." This was followed in Pulliam v. Osborne, 17 How. (58 U. S.) 471, in which the property (slaves) had been sold by the sheriff, and then seized by the marshal. The court said: "In Alabama the bona fide purchaser at a judicial sale made to enforce a statutory lien takes the property discharged of liens of the same description, whether the subject of the sale be land or personal property. The propriety of this rule is fully vindicated by the statement in Hagan v. Lucas," supra. In a case arising in Mississippi the court reached an opposite conclusion, but only because by the law of that state a release of the property on the defendant's bond operates to suspend the lien, and a levy by the marshal on property so released was therefore lawful. Brown v. Clarke, 4 How. (45 U. S.) 4. In Peck v. Jenness, 7 How. (48 U. S.) 612, a creditor made an attachment under process from a New Hampshire state court, and in bankruptcy proceedings thereafter begun in a federal court it was decreed that the attachment was not a lien, and the sheriff was ordered to deliver the property to the assignee. This decree was pleaded by way of estoppel in the state court, but the objection was overruled, and judgment given for plaintiff, which was affirmed by the state supreme court and by the United States supreme court, on the ground that neither state nor United States courts can take property from the custody of the other. [An important case on this subject arose in Pennsylvania. A sheriff seized a vessel under a foreign attachment in a state court, and thereafter the marshal seized her under admiralty process, although he found the sheriff in possession. The ship was sold in the state court, then sold in admiralty, then replevied by the purchaser under the former sale. Thereupon the purchaser under the admiralty sale filed a libel to regain possession. A decree for libelant was reversed in Taylor v. The Royal Saxon, Case No. 13,803, by Grier, circuit justice, who held that the sheriff's possession was conclusive against the jurisdiction of the federal court, citing and distinguishing Certain Logs of Mahogany, supra. In the replevin suit the state court gave judgment for the purchaser at the sheriff's sale, and this was affirmed in Taylor v. Carryl, 24 Pa. St. (12 Harris) 261, where it was held that the Pennsylvania foreign attachment procedure was in rem, and among equal jurisdictions that is exclusive which is first attached. The United States supreme court affirmed this decision on appeal. Id. 20 How. (61 U. S.) 583; Mr. Chief Justice Taney and Messrs. Justices Wayne, Grier, and Clifford dissenting. This case was followed in Freeman v. Howe, 24 How. (65 U. S.) 450, where it was held that property cannot be taken by a sheriff on a process of replevin out of a marshal's hands, although the latter had made the levy on goods not named in his writ. But the marshal would be liable in trespass in a state court. Buck v. Colbath, 3 Wall. (70 U. S.) 334. The court, state or federal, which first gets jurisdiction, holds it, to the exclusion of the other, in criminal as well as civil cases. Taylor v. Taintor, 16 Wall. (83 U. S.) 366. This was a suit on a forfeited recognizance. [It seems that a United States court may acquire jurisdiction without a seizure by the marshal. In Coggeshall v. U. S., 2 Wall. (69 U. S.) 383, a revenue officer took possession of a slave ship which entered the port of Newport, and retained it until the marshal seized her. In the mean time a sheriff levied an attachment, but it was held that the vessel was in the custody and jurisdiction of the United States while in the hands of the revenue officer, and that the federal district court had jurisdiction. Where a defendant removes a cause from a state to a federal court, and the plaintiff files an amended petition, the cause is beyond the jurisdiction of the state courts, and plaintiff cannot get from an appellate state court a reversal of the order of removal. Home Life Ins. Co. v. Dunn, 19 Wall. (86 U. S.) 214. After a lawful seizure of the res, it is constructively in the jurisdiction of the court until the determination of the cause, although actually wrongfully removed to another district. The Rio Grande v. Otis, 23 Wall. (90 U. S.) 458. [The principle of Taylor v. Carryl, supra, does not apply to libels in admiralty by the owner of a vessel claiming the benefit of the act of congress of 1851, limiting the liability of shipowners for cargo destroyed by fire, for the United States have exclusive jurisdiction under the act, (Mr. Justice Field and Mr. Justice Gray dissenting.) But, in the absence of such statutory exclusive jurisdiction, the principle is applicable without distinction to seizures in admiralty and by execution or attachment, (Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355.) See Mr. Chief Justice Taney's dissenting opinion in Taylor v. Carryl, supra; also to property in the possession of one court for administration, (Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565.) And a seizure by a sheriff of property in the hands of a purchaser at a marshal's sale is void where the process under which the seizure was made was begun while the property was in the custody of the federal court.]

---

## Case No. 453.

### ANONYMOUS.

[13 Int. Rev. Rec. 78.]

Circuit Court, S. D. New York.   Dec. 29, 1870.

[The case reported without title in 13 Int. Rev. Rec. 78, is the same as In re Nicolas, Case No. 10, 256.]

---

## Case No. 454.

### ANONYMOUS.

[14 Int. Rev. Rec. 103.]

[The case reported without title in 14 Int. Rev. Rec. 103, is the same as The Sunnyside, Case No. 13,622.]

---

## Case No. 455.

### ANONYMOUS.

[16 Int. Rev. Rec. (1872) 92.]

District Court, S. D. New York.

CUSTOMS DUTIES—SMUGGLING—INFORMER'S SHARE.

[A person who gives important information to revenue officers, and thereby prevents the smuggling of goods, is entitled to the informer's share of the forfeiture, although the information was given while he was under arrest for suspected complicity in the smuggling.]

[See note at end of case.]

[At law. Suit by the United States against Beare, a member of the importing firm of Smith & Beare, to recover the value of smuggled goods. Beare was also arrested criminally, but by a compromise all proceedings in both suits were stopped. Sisson and the agents of Col. Howe filed claims as informers, which were referred to a commissioner. Heard on exceptions by Sisson to the commissioner's report. Sustained.]